Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 1 of 18 PageID# 2052

TIMOTHY SEYMOUR 30(b)(6)                                August 22, 2014
BILENKY vs. RYOBI                                                   1–4

## Page 1

```
            UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF VIRGINIA, NORFOLK DIVISION


STEPHEN E. BILENKY,
Administrator of the
Estate of Frank S. Wright,
deceased,                    CIVIL NO. 2:13CV345
    Plaintiff,
  vs.
RYOBI, LTD., et al.,
    Defendants.
~~~~~~~~~~~~~~~~~~~~~~~~~


         VIDEOTAPED DEPOSITION OF
           TIMOTHY DANIEL SEYMOUR
    AS CORPORATE REPRESENTATIVE OF HOME DEPOT


             August 22, 2014

              8:05 a.m.

         3353 Peachtree Road, N.E.
              Atlanta, Georgia



     Deborah P. Longoria, CCR B-1557, RPR
```

## Page 2

```
                  APPEARANCES
On behalf of the Plaintiff:
    SHAPIRO LEWIS APPLETON & DUFFAN, P.C.
    RICHARD N. SHAPIRO, ESQ.
    1294 Diamond Springs Road
    Virginia Beach, Virginia   23455
    757.460.7776
    Rshapiro@hsinjurylaw.com
On behalf of the Defendants:
    DICKIE, MCCAMEY & CHILCOTE, P.C.
    DOUGLAS M. GRIMSLEY, ESQ.
    Two PPG Place
    Suite 400
    Pittsburgh, Pennsylvania   15222-5402
    412.392.5420
    Dgrimsley@dmclaw.com; kwhite@dmclaw.com

Also Present:
    George Bush, Videographer
    Jonathan White, Assistant General Counsel,
       Home Depot
```

## Page 3

```
              INDEX TO EXAMINATIONS
WITNESS:  Timothy Daniel Seymour as Corporate
Representative of Home Depot
                                                   Page
Cross-Examination by Mr. Shapiro                      5
Continued Cross-Examination, on video,
       by Mr. Shapiro                                12

              INDEX TO EXHIBITS
Plaintiff's
  Exhibit        Description                        Page

    1     Deposition Notice                           13
    2     Sales Receipt                               17
    3     First Page Ryobi Product Manual
          HDK19H42                                    18
    4     Picture, Exemplar Ryobi Mower               20
    5     Picture, Subject Mower Post Fire            40
    6     Picture, Back Yard                          40
    7     Picture, Mr. Wright                         41
    8     CPSC 11/16/01 Recall Notice                 48
    9     CPSC 12/6/04 Recall Notice                  50
   10     December 2004 Recall Notice Highlighted     50
   11     CPSC 7/11/06 Recall Notice                  54
   12     CPSC July 2006 Recall Notice
          Highlighted                                 57
   13     Pictures, Original Tank, Updated Tank       57
```

## Page 4

```
   14     Picture re "Fuel line is clamped
          here"                                       59
   15     Picture re "Husqvarna calls these
          'barbs'"                                    60
   16     Picture re "Barb on replacement fuel
          tank"                                       60
   17     Picture re "Tank barb comparison"           61

    (Photocopies of Exhibits 1 through 17 have been
attached to the original transcript, the originals
having been returned to Mr. Shapiro.)
```



Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 2 of 18 PageID# 2953

TIMOTHY SEYMOUR  30(b)(6)  
BILENKY vs. RYOBI

August 22, 2014

5–8

Page 5

1    Videotaped Deposition of  
2    Timothy Daniel Seymour  
3    as Corporate Representative of Home Depot  
4    August 22, 2014  
5    (Reporter disclosure made pursuant to Article  
6  8.B. of the Rules and Regulations of the Board of  
7  Court Reporting of the Judicial Council of Georgia.)  
8         TIMOTHY DANIEL SEYMOUR,  
9  having been first duly sworn or affirmed, testifies  
10  as follows:  
11         CROSS-EXAMINATION  
12  BY MR. SHAPIRO:  
13    Q.   Could you please state your full name,  
14  sir.  
15    A.   My name is Timothy Daniel Seymour.  
16    Q.   And what is your business address?  
17    A.   Geez.  Paces Ferry Drive --  
18       THE WITNESS:  What is it, John?  3 --  
19       MR. WHITE:  Paces Ferry Road.  
20       THE WITNESS:  Yeah, Paces Ferry Road.  But  
21  what's the street number?  
22       MR. WHITE:  2455.  
23       THE WITNESS:  2455 Paces Ferry Road,  
24  Atlanta, Georgia.  
25    Q.   (By Mr. Shapiro)  And what is your title  

Page 6

1  with HD?  
2    A.   I'm a merchant for outdoor power  
3  equipment.  
4    Q.   How long have you been in that position,  
5  approximately?  
6    A.   I've been in that position for three  
7  years.  
8    Q.   Okay.  And were you with Home Depot before  
9  that in a different role?  
10    A.   Yes.  
11    Q.   How long or what role were you in --  
12    A.   I've been at Home Depot for nine years.  
13    Q.   Beginning in what year would that be?  
14    A.   Beginning in 2005.  
15    Q.   Okay.  We're not on the video yet because  
16  before I start the video, I wanted to ask a few  
17  things about the deposition notice so we wouldn't be  
18  fumbling around and asking questions that were a  
19  waste of everyone's time.  
20       But this is the deposition notice.  And  
21  one of the things I had a question about was -- there  
22  are a number of paragraphs here; I think they're one  
23  through 13.  And under the specific ones I'm  
24  concerned about, because I didn't see any paper  
25  produced by the attorneys on the case, has to do with  

Page 7

1  No. 10, 11.  We asked for the total number of units  
2  and revenue received from the sale of all  
3  Ryobi-branded lawn tractors for the years 2003  
4  through 2010.  
5       Did you make inquiry whether there were  
6  sales records for Ryobi tractors in any of those  
7  years?  
8    A.   I did.  
9    Q.   Okay.  And what did you find out?  
10    A.   So we don't have sales records that go  
11  back that far into the past.  So we keep -- because  
12  you're talking about store SKU-level sales data,  
13  that's five years' worth of history, so I can go back  
14  till I guess it's about '09.  There's no record of  
15  Ryobi tractors from '09 forward, and there wasn't any  
16  record -- I don't have any way to access anything  
17  prior to that at the product level SKU levels of what  
18  we use.  
19    Q.   Okay.  So Ryobi-branded lawn tractors were  
20  not being sold as of 2009 and later?  
21    A.   Correct.  
22    Q.   Okay.  In what calendar years do you  
23  believe Ryobi lawn tractors were sold by Home Depot  
24  USA?  
25    A.   Based on what I've heard through this,  

Page 8

1  sometime around 2005, 2006.  
2    Q.   Was about the last year?  
3    A.   Yes.  
4    Q.   When did Home Depot start selling Ryobi  
5  lawn tractors; do you have an idea?  
6    A.   I don't know.  Again, I believe 2005.  
7    Q.   So only a year or two?  
8    A.   My understanding is yes.  
9    Q.   So based on your investigation, there  
10  weren't any sales of Ryobi lawn tractors after 2006?  
11    A.   Correct.  
12    Q.   Now, Ryobi is sort of like a captive brand  
13  for Home Depot, isn't it?  Is it sold by anyone else  
14  in the United States except Home Depot outlets?  
15    A.   I'm not aware of it being sold by anybody  
16  other than Home Depot.  
17    Q.   So do you have any understanding of how  
18  long the Ryobi brand has been sold in Home Depot  
19  stores, going outside lawn tractors?  
20       MR. GRIMSLEY:  Objection to form.  
21  Objection to relevance.  
22       THE WITNESS:  I believe it has been a --  
23  it's been as long as I have been part of the  
24  company, and it may well predate that.  
25    Q.   (By Mr. Shapiro)  Did you -- and you told  



Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 3 of 18 PageID# 2954

TIMOTHY SEYMOUR  30(b)(6)  
BILENKY vs. RYOBI

August 22, 2014  
9–12

Page 9
1  me earlier that for before 2009 you didn't have
2  access to any of the sales records?
3     A.   It's not access.  I don't believe that we
4  keep records at a product level that far back, and I
5  have not found any in my searching for them.
6     Q.   Okay.  And the same question preliminarily
7  about warranty claims.  So we're looking at a couple
8  year period of somewhere in 2005 and 2006.  You don't
9  have any access to any warranty claims relating to
10 those sales?
11        MR. GRIMSLEY:  Objection to form.
12        THE WITNESS:  So warranty claims would go
13    to the manufacturer, would not process through
14    the Home Depot.
15    Q.   (By Mr. Shapiro)  You send all those back
16 to the manufacturers of products?
17    A.   We wouldn't even get a warranty claim.  We
18 would direct the customer/claimant to the
19 manufacturer.
20    Q.   If the person walks in the store and wants
21 to make the claim, do Home Depot reps ever do
22 anything to process it or to notify the manufacturer,
23 for example?
24    A.   No.  We don't have any kind of mechanism
25 or process to do that.  We would -- we would try to

Page 10
1  connect the customer to the manufacturer through a
2  phone number.  So the store would try to look up the
3  phone number, like call us to try to find the phone
4  number, that kind of thing.
5     Q.   What about -- I mean under this topic of
6  warranty claims, what about returns; when the
7  customer actually brings the product, which is a form
8  of a warranty claim, when they bring the product in
9  and say, I want to return this, it's not working?
10        MR. GRIMSLEY:  Objection to form.
11        THE WITNESS:  I mean, Home Depot does
12    accept returns on products under certain
13    circumstances, yes.
14    Q.   (By Mr. Shapiro)  So if that -- that's not
15 an easy thing to do with a lawn tractor, of course.
16 You don't just show up and say, Take it back.
17        Would you have any access to that data in
18 2005 and 2006, even if --
19    A.   So it's the same kind of data, right?  So
20 it's -- it would be -- it would show up to us as
21 effectively a negative sale, right?  So it's a return
22 from the customer; we refund the customer's money; we
23 take the tractor back.  That -- that is store-SKUed
24 day-level data, and so you start to extrapolate that
25 out.  Again, that's kind of what we -- we would hold

Page 11
1  that for five years.  In the databases I'm familiar
2  with, it doesn't exist back in 2005, 2006.
3        MR. SHAPIRO:  Okay.  I just wanted to get
4    that information before we went on the video so
5    I didn't clog the thing up with some questions
6    there.  So let's go ahead and we'll start the
7    video deposition, okay, if that's all right with
8    you.
9        We'll swear him in again, which will be
10   part of the deposition record before we go on
11   video.
12       (Discussion off the record.)
13       THE VIDEOGRAPHER:  We'll go on the record
14   here.
15       This is the beginning of Video 1 in the
16   30(b)(6) deposition of Tim Seymour, corporate
17   representative of Home Depot USA, Inc.
18       Today's date is August 22nd, 2014.  And
19   the time is 8:13 a.m.
20       Would counsel present please identify
21   themselves and state who they represent.
22       MR. SHAPIRO:  Rick Shapiro, one of the
23   attorneys representing the estate.
24       MR. GRIMSLEY:  Douglas Grimsley for
25   defendants.

Page 12
1        THE VIDEOGRAPHER:  And would the court
2    reporter please swear in the witness.
3        TIMOTHY DANIEL SEYMOUR,
4  having been duly sworn or affirmed, again for video
5  record, testifies as follows:
6        CONTINUED CROSS-EXAMINATION
7  BY MR. SHAPIRO:
8     Q.   Good morning, sir.
9     A.   Morning.
10    Q.   My name is Rick Shapiro.  I'm one of the
11 attorneys representing the estate in the case.
12       Can you please state your full name for
13 the jury.
14    A.   Sure.  My name is Timothy Daniel Seymour.
15    Q.   And you are employed with Home Depot USA
16 in the Atlanta area, correct?
17    A.   Yes.
18    Q.   And what is your title, Mr. Seymour?
19    A.   I'm a merchant for outdoor power
20 equipment.
21    Q.   And you're appearing today on August 22nd,
22 2014, for a deposition here.  And do you understand
23 that lawyers call this a company representative
24 deposition where you're appearing on behalf of Home
25 Depot on certain topics today?



Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 4 of 18 PageID# 2955

TIMOTHY SEYMOUR  30(b)(6)                                          August 22, 2014
BILENKY vs. RYOBI                                                        13–16

Page 13

1   A.   Yes.
2   Q.   And appearing as a company representative,
3   have you had an opportunity to talk to at least one
4   of the lawyers representing Home Depot about the
5   nature of this deposition today?
6   A.   Yes.
7        (Plaintiff's Exhibit-1 was marked for
8        identification.)
9   Q.   (By Mr. Shapiro) And there were certain
10  topics in a deposition notice, which you have in
11  front of you and I'm marking as Exhibit 1, and you
12  had an opportunity to look at some of the topics that
13  were the subjects for today's deposition?
14  A.   Yes.
15  Q.   And in some of these types of depositions,
16  I actually read the question and we go one by one,
17  but I don't think that would be the way to go today.
18       But in general, so the jury understands
19  where I'm going and what this is about, we're going
20  to talk about Ryobi lawn tractors today, and some of
21  the questions are going to be regarding sales of
22  Ryobi lawn tractors.
23       Do you understand that?
24  A.   Yes.
25  Q.   And I'm going to have some questions about

Page 14

1   warranty types of things.
2        Do you understand that?
3        MR. GRIMSLEY:  Objection to form.
4        THE WITNESS:  Yes.  When you say --
5   Q.   (By Mr. Shapiro) That means it's a
6   subject on the notice?
7   A.   Correct.  Yes.
8   Q.   Okay.  And there are some subjects on the
9   notice about recall questions?
10  A.   Yes.
11  Q.   And whether there were warnings about some
12  of the problems or hazards with Ryobi lawn
13  tractors --
14       MR. GRIMSLEY:  Objection to form.
15  Q.   (By Mr. Shapiro) -- is one of the
16  subjects?
17  A.   Yes.
18  Q.   Okay.  Now, in looking at these subjects
19  and conferring with the lawyers, did you do any
20  investigation of the subjects?
21  A.   I did.
22  Q.   All right.  And for example, there's
23  subjects about the design and manufacture of Ryobi
24  lawn tractors of the nature that are in this case
25  that the plaintiff has brought.

Page 15

1        Did you make inquiry about Ryobi lawn
2   tractors of the make and model that are the subject
3   of this case?
4   A.   When you say made inquiry, can you
5   describe what you mean?
6   Q.   Did you look into company records about
7   this?
8   A.   I looked into what I had available in the
9   offices that -- where I sit and where previous
10  merchants in this category have sat.  I looked on our
11  shared drive to understand what documents may exist
12  around the Ryobi tractor, yes.
13  Q.   Okay.  And can you tell the jury about
14  your title and what your responsibilities are now.
15  A.   I'm a category manager for outdoor power
16  equipment.  I have responsibility for riding lawn
17  equipment as well as other large engine equipment,
18  like snow blowers and log splitters and things of
19  that nature.  And my job is to help determine
20  products at the Home Depot and how we go bring them
21  to market from a retail positioning standpoint.
22  Q.   And give me your title one more time.
23  A.   Sure.  I'm a category merchant for outdoor
24  power equipment.
25  Q.   Okay.  And does that involve going to

Page 16

1   trade shows?
2   A.   Occasionally.
3   Q.   Okay.  And as far as your preparation for
4   today, did you review any other depositions of any
5   other witnesses?
6   A.   No.
7   Q.   Okay.  Did you review any reports of any
8   expert witnesses?
9   A.   No.
10  Q.   Did you look at any pictures?  For
11  example, did you see pictures of the Ryobi lawn
12  tractor that's the subject of the case?
13  A.   No.
14  Q.   Okay.  We may show you a couple.
15       Now, we briefly spoke before we were on
16  the video deposition about a couple questions I had.
17       And is it true that you told me that Ryobi
18  lawn tractors were only sold for a year or two in
19  Home Depot stores in the United States?
20  A.   That's my understanding.
21  Q.   In what years do you believe those were
22  sold, sir?
23  A.   2005, 2006, that time frame.
24  Q.   And you also told me that Ryobi as a
25  brand, there are other tools and products sold in

Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 5 of 18 PageID# 2956

TIMOTHY SEYMOUR  30(b)(6)
BILENKY vs. RYOBI

August 22, 2014
17–20

Page 17

1  Home Depot stores besides lawn tractors, right?
2    A.  Yes.
3    Q.  And the sales of those other brands of
4  Ryobi products predated sales of lawn tractors and
5  have continued since 2006 also?
6    A.  Have certainly continued since.  I believe
7  but I'm not a hundred percent sure that they
8  predated.
9    Q.  Okay.  And so it would be fair to say that
10 during the sales of the Ryobi lawn tractors in the
11 '05-06 time frame, you were not the product category
12 manager -- I'm messing up your title, I know, but
13 roll with me on that.
14   A.  Yeah.  Merchant.  No problem.
15   Q.  -- but you were with Home Depot, I think
16 you told me, in another capacity, right?
17   A.  I started at the company in 2005.
18   Q.  Thank you.  In what type of thing -- were
19 you in that category then or a different category?
20   A.  No, I wasn't actually involved in category
21 management at that point.  I was -- I started in the
22 company in strategic business development.
23   Q.  Okay.  So, let's see.  One moment.
24       (Plaintiff's Exhibit-2 was marked for
25       identification.)

Page 18

1    Q.  (By Mr. Shapiro)  I'm going to mark as
2  No. 2 a document that is a sales receipt and ask you
3  if this looks to be the sales receipt of a Ryobi lawn
4  tractor to Frank Wright, who is the decedent that the
5  estate is representing in this case.
6        Have you seen this before?
7    A.  Yes.
8    Q.  Okay.  And it -- does it seem that
9  Mr. Wright purchased a Ryobi lawn mower, it's got a
10 SKU or a reference number here --
11   A.  Yeah.
12   Q.  -- in September 2005 from the North
13 Military Highway Home Depot store?
14   A.  Yes.
15   Q.  And I think it shows here it was about a
16 thousand dollars, and he paid, I guess, $59 to have
17 it delivered to his Chesapeake, Virginia, residence,
18 it looks like?
19   A.  Yes.
20   Q.  Okay.  Done with that.  Flip this over
21 here.
22       (Plaintiff's Exhibit-3 was marked for
23       identification.)
24   Q.  (By Mr. Shapiro)  And I'm showing you a
25 document I'm marking as Exhibit 3, which is a single

Page 19

1  cover page and it has the words "Ryobi" on it.
2        And does this appear to be a cover page of
3  a product manual that matches with the sale that I
4  just showed you under No. 2 for a Ryobi lawn tractor?
5    A.  It appears to be the cover manual of a
6  Ryobi lawn tractor.  Whether it's the specific model
7  that matches what was sold, I don't know if I could
8  know from this.
9    Q.  Okay.  You don't have any reason to think
10 it's not, do you?
11   A.  I don't have any reason to think it's not.
12       MR. GRIMSLEY:  Objection to form.
13   Q.  (By Mr. Shapiro)  Okay.  And were you
14 generally familiar with the fact that Mr. Wright had
15 a fire on a lawn tractor on December 23rd, 2010, in
16 the backyard of his home in Chesapeake, Virginia?
17   A.  Yes.  I heard that through this process.
18   Q.  Okay.  And as it shows on the product
19 manual, it had a model name or number HDK19H42?
20   A.  Yes.
21   Q.  The next exhibit I'd like to show you --
22       MR. GRIMSLEY:  Richard, I just want to
23       interpose an objection.  If this is a picture of
24       an exemplar --
25       MR. SHAPIRO:  Yes.

Page 20

1        MR. GRIMSLEY:  -- that does not match the
2        model number of the decedent's mower, then I'd
3        just like a continuing objection.  I'm not going
4        to object every time, but I want it on the
5        record that we object to the extent this is not
6        the same model.
7        MR. SHAPIRO:  Right.
8        (Plaintiff's Exhibit-4 was marked for
9        identification.)
10   Q.  (By Mr. Shapiro)  Does this appear to be
11 an exemplar, or by exemplar, I mean a picture of a
12 Ryobi lawn tractor of a similar type to the one that
13 was sold to Mr. Wright?  It might not be exactly the
14 -- well, it's not the one that burned up, but it --
15 of a similar type of mower?
16       MR. GRIMSLEY:  Objection, form.
17       THE WITNESS:  It appears to be a Ryobi
18       lawn tractor for sure, and I have no reason to
19       believe it's not similar.
20   Q.  (By Mr. Shapiro)  Okay.  I want to turn to
21 general questions about sales of lawn tractors.
22       That's your category and has been for the
23 last several years, right?
24   A.  Since 2011.
25   Q.  And in determining what products get sold



Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 6 of 18 PageID# 2957

TIMOTHY SEYMOUR  30(b)(6)                                    August 22, 2014
BILENKY vs. RYOBI                                                      21–24

Page 21

1  in a Home Depot store, that's something that you have
2  responsibility for, right?
3      A.  Yes.
4          MR. GRIMSLEY:  Objection.
5      Q.  (By Mr. Shapiro)  And can you tell this
6  jury how a company like Ryobi comes to Home Depot and
7  pitches its product and gets it in your store?
8      A.  I have one clarification.
9      Q.  Yes, sir.
10     A.  I don't believe Ryobi is a company.
11 Right?  Ryobi's a brand.  And so we would -- a
12 manufacturer would come to the Home Depot with a
13 brand in their portfolio.
14     Q.  Okay.
15     A.  And we have, you know, processes that we
16 would call a line review to review what are the
17 potential models of lawn tractor or whatever category
18 we were looking at to evaluate what was -- what do we
19 currently have in the lineup and was there something
20 new we wanted to change.
21     Q.  The qualities of the product are something
22 important to you in that category, right, in deciding
23 whether to place one product as opposed to another,
24 right?
25         MR. GRIMSLEY:  Objection to form.

Page 22

1          THE WITNESS:  Yeah.  We look at a variety
2      of factors, including, you know, what are the
3      features and benefits of the equipment, who is
4      the manufacturer, what is the brand and how
5      relevant would it be to our store and our
6      customer.  All of those are part of the
7      equation.
8      Q.  (By Mr. Shapiro)  What about the
9  reliability of the lawn tractor, is that something
10 that you look at as a product category manager?
11 Excuse me.
12     A.  We would certainly -- yes.  We would
13 certainly look at or expect reliability out of -- out
14 of the lawn tractors that we -- that we select.
15     Q.  Okay.
16         MR. SHAPIRO:  That was a fail.  Okay.
17     Q.  (By Mr. Shapiro)  Okay.  I have some
18 questions about the products that you review and get
19 ready for deciding whether to place into a Home Depot
20 store.
21         Now, how many Home Depot stores are there
22 currently in the United States; do you know,
23 approximately?
24     A.  1970-ish.
25     Q.  That's pretty close.  Okay.

Page 23

1      Has that number changed a lot since 2005
2  or 2006?
3      A.  Yes.
4      Q.  What was it around then or how has it
5  changed?
6      A.  It has grown substantially --
7      Q.  Okay.
8      A.  -- since then.  I wouldn't -- I wouldn't
9  feel comfortable guessing at what the number was in
10 2005.
11     Q.  I want to ask you if Home Depot agrees
12 that all the products -- and the products would be
13 lawn tractors or any other products it sells --
14 should be -- should the products be fit for
15 consumers' ordinary uses?
16         MR. GRIMSLEY:  Objection to form.
17         THE WITNESS:  I'm not sure what you mean
18     by "ordinary uses."
19     Q.  (By Mr. Shapiro)  Well, the ordinary use
20 that the product is sold for, like a lawn tractor.
21         What would you say a lawn tractor's
22 ordinary use would be?
23     A.  Cutting grass.
24     Q.  Okay.  Would you say that the product
25 should be fit for the consumer's ordinary use of

Page 24

1  cutting grass?
2          MR. GRIMSLEY:  Objection to form.
3          THE WITNESS:  Yes.
4      Q.  (By Mr. Shapiro)  Should it be fit for the
5  particular purposes it's designed for, which may be
6  just cutting grass, mulching grass?
7          MR. GRIMSLEY:  Objection to form.
8      Q.  (By Mr. Shapiro)  Any reason it wouldn't
9  be fit for the particular purpose of that?
10     A.  We would -- yes.  No.  It should -- it
11 should be fit for the purpose of cutting grass.
12     Q.  Okay.  Now, again, we're talking
13 specifically for lawn tractors, which when I say lawn
14 tractor, in the industry that's a ride-on lawn mower,
15 right?
16     A.  Yes.
17     Q.  So if I say ride-on, I'm still saying lawn
18 tractor, right?
19     A.  Yes.
20     Q.  Should they be fit to cut grass?
21     A.  Yes.
22     Q.  Should they be fit to mulch grass?
23     A.  Certain tractors kind of inherently have
24 the mulching capability.  Others have an attachment
25 that is added to aid in mulching.



Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 7 of 18 PageID# 2958

TIMOTHY SEYMOUR  30(b)(6)                                    August 22, 2014
BILENKY vs. RYOBI                                                      25–28

Page 25

1  Q.  What's the attachment?  Like a bagger?
2  A.  No.  Actually it's called a mulch kit.
3  Q.  Okay.  Do Ryobi lawn tractors, are they
4  capable of mulching grass?
5      MR. GRIMSLEY:  Objection.
6      THE WITNESS:  I don't know.
7  Q.  (By Mr. Shapiro)  Okay.  So we don't know
8  the answer to this.
9      Should they be fit to cut and mulch leaves
10  and grass?
11     MR. GRIMSLEY:  Objection to form.
12     THE WITNESS:  Again, certain tractors are
13     built to mulch; others are -- others are not
14     without some other attachment to them.
15  Q.  (By Mr. Shapiro)  Well, did you
16  investigate whether the Ryobi lawn tractor that's the
17  subject of this case could mulch leaves?
18     MR. GRIMSLEY:  Objection to form.
19     THE WITNESS:  I do not have an ability to
20     know that.
21  Q.  (By Mr. Shapiro)  From doing your inquiry,
22  you didn't have an ability to find out?
23  A.  There were -- there are no records that I
24  had access to about the specific, call it, features
25  of the Ryobi lawn tractor.

Page 26

1  Q.  Okay.  Well, in that category, you're
2  still in the category of ride-on lawn mowers, right?
3  A.  Yes.
4  Q.  You work with it every day?
5  A.  Yes.
6  Q.  Is it acceptable user to be a retired
7  person and operate a ride-on lawn mower?
8      MR. GRIMSLEY:  Objection to form.
9      THE WITNESS:  I would think -- I mean,
10     there are -- I think the manufacturers set out
11     criteria for the use of particular equipment.
12     If a retired person met the use of the
13     equipment, yes.
14  Q.  (By Mr. Shapiro)  Well, I'm asking this
15  right now.  I'm saying you're the product category
16  manager, at least in the last several years?
17  A.  Yes.
18  Q.  Is there anything in Home Depot sales or
19  marketing that says retired persons cannot operate
20  ride-on lawn mowers?
21     MR. GRIMSLEY:  Objection to form.
22     THE WITNESS:  Not that I'm aware of.
23     MR. SHAPIRO:  Just your objection to form,
24     what is -- is the objection leading?
25     MR. GRIMSLEY:  No.  You're making

Page 27

1  assumptions --
2      MR. SHAPIRO:  Okay.
3      MR. GRIMSLEY:  -- that he's not able to
4  answer --
5      MR. SHAPIRO:  That's a speaking objection.
6  Okay?  If you have --
7      MR. GRIMSLEY:  You asked me what the basis
8  of my objection was and I gave it to you.
9      MR. SHAPIRO:  Right.  But that's not form.
10  Okay?
11     MR. GRIMSLEY:  I'll make my objections.
12  You can bring them up later.
13     MR. SHAPIRO:  Okay.
14     MR. GRIMSLEY:  The objection is to form.
15     MR. SHAPIRO:  Okay.
16     MR. GRIMSLEY:  And I gave you the reason
17  why.
18  Q.  (By Mr. Shapiro)  So is there anything
19  that tells retired persons they can or cannot operate
20  ride-on lawn mowers in the Home Depot stores?
21  A.  Not that I'm aware of.
22  Q.  What about senior citizens, is there
23  anything that says seniors cannot operate a ride-on
24  lawn mower in your Home Depot stores?
25     MR. GRIMSLEY:  Objection to form.

Page 28

1      THE WITNESS:  Not that I'm aware of.
2  Q.  (By Mr. Shapiro)  Okay.  I want to --
3      MR. GRIMSLEY:  Richard, could you turn
4  that back over, please, just a second?
5      MR. SHAPIRO:  Reason?
6      MR. GRIMSLEY:  I want to put a -- I'm
7  going to object to you checking yes for the last
8  two based upon his responses.  That's my
9  objection.
10  Q.  (By Mr. Shapiro)  I want to ask about Home
11  Depot knowledge, okay, and about Ryobi.  Okay?
12     I asked you earlier, Ryobi is sort of a
13  brand that is sold in Home Depot stores, sort of like
14  a captive brand?
15  A.  Yeah.  I -- it is -- it is a private
16  brand -- or is a proprietary brand of the Home Depot.
17  Q.  And so it's only sold in the Home Depot
18  retail stores or online with Home Depot, right?
19  A.  In the US, that's my understanding.
20  Q.  Okay.  And that relationship predated
21  2000-two thousand -- I'm sorry, 2005-2006 when these
22  lawn tractors were sold?
23     MR. GRIMSLEY:  Objection; asked and
24     answered.
25     THE WITNESS:  I believe so, but I'm not

Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 8 of 18 PageID# 2959

TIMOTHY SEYMOUR  30(b)(6)  
BILENKY vs. RYOBI

August 22, 2014  
29–32

**Page 29**

1  certain of that.
2  Q.  (By Mr. Shapiro)  Okay.  And Home Depot
3  sells a lot of other Ryobi products besides lawn
4  tractors?
5  A.  We do.
6  Q.  And Ryobi has a relationship, a contract
7  relationship with Husqvarna, doesn't it?
8  A.  I think in relates to this lawn tractor,
9  my understanding is the Ryobi tractor was
10  manufactured by Husqvarna.
11  Q.  Okay.  And I want to ask you about
12  Husqvarna.  Is that a company you're familiar with in
13  your product category?
14  A.  Yes.
15  Q.  And Husqvarna manufactures for other
16  brands besides its own label Husqvarna, right?
17  A.  Yes.
18  Q.  You just told me one is Ryobi, right?
19  A.  Yes.
20  Q.  Well, Husqvarna also labels some of the
21  tractors that it sells with its own label, right?
22  A.  Yes.
23  Q.  Has Home Depot sold Husqvarna tractors?
24  A.  Not to my knowledge.
25  Q.  Okay.  Has Husqvarna sold Craftsman?

**Page 30**

1  A.  Yes.
2  Q.  Okay.  And does Husqvarna also brand
3  Murray tractors?
4  A.  I was under the belief that Murray was
5  actually a Briggs brand or an MTD brand, but it is
6  possible that it's also been a Husqvarna brand.
7  Q.  What about Poulan or Poulan Pro?
8  A.  Yes, that is a Husqvarna brand.
9  Q.  Southern States?
10  A.  I'm not sure.
11  Q.  And Weed Eater?
12  A.  Yes.
13  Q.  Okay.  I want to ask you about Home
14  Depot's awareness of product dangers or hazards in
15  general.
16  And you told me you're a category manager;
17  is that what you're called?
18  A.  Sure, that works.
19  Q.  Is that similar to a product manager?
20  A.  No.
21  Q.  Okay.  Give me the difference in -- are
22  product managers under the category manager, or is
23  that just something different?
24  A.  We don't -- I mean, product -- I guess
25  when you say product manager, that sounds like

**Page 31**

1  somebody on a manufacturing side who's involved in
2  the development, marketing, product roadmap of a
3  product.  That's not a role at the Home Depot.
4  Q.  Okay.  Then we're going to mark this out
5  and we're going to call it a category manager.
6  Okay.  That's your title, right?
7  A.  I'm a merchant, but it's the same.
8  Q.  Okay.  So I'm asking these questions about
9  your position and position like yours at Home Depot.
10  And is it fair to say that you need to
11  remain familiar with the products in your category?
12  A.  Yes.
13  Q.  And what about attending major trade shows
14  to look at the products that are coming out that you
15  might want to carry in Home Depot stores?
16  MR. GRIMSLEY:  Objection to form.
17  THE WITNESS:  We occasionally but not
18  annually go to trade shows.
19  Q.  (By Mr. Shapiro)  Does a representative of
20  Home Depot go to the trade shows for the outdoor or
21  lawn and garden or hardware market?
22  A.  Some -- some years, yes.  Some years, no.
23  Q.  Isn't it important to keep up with the new
24  brands to see what you want to carry in your Home
25  Depot stores?

**Page 32**

1  MR. GRIMSLEY:  Objection, form.
2  THE WITNESS:  It is important to keep up
3  with new brands.  We may or may not need a trade
4  show to -- to do that.
5  Q.  (By Mr. Shapiro)  Can we agree that some
6  Home Depot representatives attend the major trade
7  shows?
8  MR. GRIMSLEY:  Objection to form.
9  THE WITNESS:  Yes.
10  Q.  (By Mr. Shapiro)  Okay.  Now is it
11  important to analyze product performance in the
12  category; that is, every SKU, every product you have
13  in your category, is it important to analyze the
14  performance of the product?
15  A.  And when you say performance, you have
16  parentheses.  I just want to make sure I understand.
17  Q.  Sales and warranty claims, for example,
18  would just be two items to look at under product
19  performance.
20  A.  Sales would be -- would certainly be one.
21  Warranty claims are not something that we have direct
22  access to.  We do look at return rates.
23  Q.  Yeah.  Well, let's say returns instead.  I
24  think that's fair.  Okay.
25  So would that be a yes?



Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 9 of 18 PageID# 2960

TIMOTHY SEYMOUR  30(b)(6)
BILENKY vs. RYOBI

August 22, 2014
33–36

Page 33

1  A.  Yes.
2  Q.  Vigilant as to product hazard reports.
3  Now, in your category, you're selling lawn tractors,
4  and you're one of the largest retailers in the United
5  States, right?
6  A.  Yes.
7  Q.  Who sells more lawn tractors, you or
8  Lowe's?
9  A.  Lowe's.
10      MR. GRIMSLEY:  Objection to form.
11  Q.  (By Mr. Shapiro)  Okay.  So you're one of
12  the top two.  No?
13  A.  Incorrect.  No.
14  Q.  Okay.  Who are the top sellers of lawn
15  tractors in the retail market in the United States?
16      MR. GRIMSLEY:  Objection to form and
17      relevance.
18      THE WITNESS:  My belief is Sears and
19      Lowe's are the top two.
20  Q.  (By Mr. Shapiro)  Okay.  Is Home Depot
21  third?
22  A.  If you count the dealers as a group, no,
23  we're not.
24  Q.  Oh.  Where does Home Depot fit?
25  A.  Fourth.

Page 34

1  Q.  Okay.  Is it important to remain vigilant
2  as to product hazard reports in the category?
3  A.  When you say product hazard reports, what
4  does that mean?
5  Q.  Any hazard that comes to the knowledge of
6  Home Depot or the industry as a whole that sell lawn
7  tractors.
8      MR. GRIMSLEY:  Objection, form.
9      THE WITNESS:  We would rely on the
10     manufacturer to understand the implications of
11     hazard reports.  That's not an expertise that
12     Home Depot necessarily has.
13  Q.  (By Mr. Shapiro)  Well, do you pay
14  attention to product hazard reports of lawn tractors?
15     MR. GRIMSLEY:  Objection to form.
16  Q.  (By Mr. Shapiro)  I mean, if you're
17  selling a product in your stores and you're reading
18  industry publications and there's reports that apply
19  to a category that you carry, would that be relevant
20  to you?
21     MR. GRIMSLEY:  Objection, form.
22     THE WITNESS:  I would expect that if a
23     report came to my attention or the manufacturer
24     brought it to my attention, that would be
25     something we would become aware of.

Page 35

1  Q.  (By Mr. Shapiro)  I mean, it could affect
2  your sales, couldn't it?
3      If the industry reports some problem with
4  one of the tractors that you sell, it can make the
5  sales drop.  Wouldn't that be relevant to you as a
6  category manager?
7      MR. GRIMSLEY:  Objection, form.
8      THE WITNESS:  Yes.
9  Q.  (By Mr. Shapiro)  So what's our answer
10  here; is it yes or no?  Would you say you don't want
11  to be vigilant or you do want to be vigilant?
12     MR. GRIMSLEY:  I'm going to object to the
13     form and the use of "hazard reports," since he's
14     already testified that he's not sure he even
15     knows what that means.
16     THE WITNESS:  Yeah.  I --
17  Q.  (By Mr. Shapiro)  I'm just going to check
18  one or the other.  Just tell me which one.  Do you
19  want to say you --
20     MR. GRIMSLEY:  I'm going to -- same
21     instruction to the witness.  He doesn't have to
22     check one or the other.  That's your choice.  He
23     doesn't have to check one or the other.
24     THE WITNESS:  Yeah, I don't understand --
25  Q.  (By Mr. Shapiro)  Okay.

Page 36

1  A.  -- enough about what you mean by hazard
2  reports to understand --
3  Q.  Okay.  Let's call this hazard reports,
4  safety issues, anything that can affect whether a
5  product you're selling is hazardous or has a safety
6  issue.
7  A.  If it -- if a -- if -- so I guess
8  typically we would expect that to become, you know --
9  first to be known by the manufacturer.  To the extent
10  the manufacturer makes us aware of it and there's an
11  action required on the part of Home Depot, yes, we
12  would want to engage on that.
13  Q.  So I guess what I'm asking is:  I
14  understand that you think it would primarily fall to
15  the manufacturer; is that your first answer?  I
16  mean --
17  A.  Yes.
18  Q.  But secondarily, since it can affect your
19  sales, would Home Depot or you as a product manager
20  want to be vigilant about any hazards or safety
21  issues relating to the products you sell in your
22  stores?
23  A.  If it came to my attention, yes.
24  Q.  Okay.  I'm going to check yes.  Okay.
25      Now, the CPSC is the Consumer Product



Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 10 of 18 PageID# 2961

TIMOTHY SEYMOUR  30(b)(6)                                    August 22, 2014
BILENKY vs. RYOBI                                                      37–40

Page 37

1  Safety Commission.  You're familiar with what that
2  stands for, right?
3     A.   I am.
4     Q.   Okay.  What about reviewing consumer
5  product safety recalls in your category, which we're
6  going to say includes lawn tractors; is that
7  something that a product category manager person
8  would be interested in knowing?
9     A.   No.
10    Q.   Okay.  Why not?
11    A.   Unless it related specifically to a
12 product that I was selling that required recall
13 activity, that's not something I've encountered other
14 than that circumstance.
15    Q.   Well -- okay.  Let me go -- let me skip to
16 this one.
17         Do you read industry magazines and
18 websites that pertain to lawn tractors?
19    A.   I look at some web e-mails, yes, and I
20 certainly go to websites, yes.
21    Q.   Is there an industry publication or
22 magazine that you like to read every month relating
23 to the lawn tractor industry?
24    A.   Actually, most of what I consume is
25 digital.  And so there's a daily update from OPEI,

Page 38

1  and that would be an example of something I look at.
2     Q.   What does that stand for, sir?
3     A.   Outdoor Power Equipment Industry.
4     Q.   Okay.  Do they put out a subscription
5  publication every week or month, or is it just an
6  online website?
7     A.   It's a -- it's a daily e-mail during the
8  business week.
9     Q.   Okay.  Do you have any magazines you get
10 on a periodic basis, or are hard copies kind of
11 trending down?
12    A.   I actually don't have any magazines that I
13 get.
14    Q.   All right.  Well, those websites, do they
15 report if the Consumer Product Safety Commission has
16 announced a recall in your category that you cover?
17    A.   Not that I've seen.
18    Q.   Are you telling me that no recall
19 information is in your publication that you get in
20 the lawn tractor industry?  That is, if the CPSC
21 recalls lawn tractors in the category you work in,
22 it's not going to be listed in the regular website
23 reports that you get?
24         MR. GRIMSLEY:  Object to form.
25         THE WITNESS:  I don't see any listing

Page 39

1  of recalls that are put out in the category.  If
2  there was a headline that said something about a
3  recall, then it might be included.  But I'm not
4  aware of a place where there's a download of
5  CPSC recalls.
6     Q.   (By Mr. Shapiro)  So the answer here,
7  reviewing Consumer Product Safety Commission recalls
8  in your category, is no?
9     A.   Yes.  Correct, the answer would be no.
10    Q.   And you do read industry websites, right?
11    A.   Yes.
12    Q.   Okay.  Okay.  I want to ask some questions
13 now about the lawn tractor that's involved in the
14 case, the model we talked about.
15         In some industries, Mr. Seymour, there are
16 events that are called "never events," and it's a
17 phrase that means, as I understand it, it should
18 never happen.  Okay?  Like in the medical field,
19 there's never events that they never want to take
20 place in an operating room.  Okay?
21         MR. GRIMSLEY:  I'm going to object to the
22    side bar.
23    Q.   (By Mr. Shapiro)  And I have a question,
24 and my question relates to this picture here
25 (indicating).  Okay?

Page 40

1         And I want to ask you if, as a product
2  category manager, you would ever want to see a lawn
3  tractor fire-engulfed like it is in this picture that
4  a consumer is using in a normal way to mow a back
5  yard?
6         MR. GRIMSLEY:  Objection to form.
7         THE WITNESS:  I would never want to see a
8     lawn tractor engulfed in flame, no.
9         (Plaintiff's Exhibit-5 was marked for
10    identification.)
11        MR. SHAPIRO:  I'm going to mark this as
12    No. 5.
13        (Plaintiff's Exhibit-6 was marked for
14    identification.)
15   Q.   (By Mr. Shapiro)  And I want to show you
16 what I've marked as No. 6.  It is a picture that
17 shows a back yard.  And I want to ask you:  From a
18 perspective of someone in your category that sells
19 lawn tractors, would there be anything out of the
20 norm in this backyard as far as someone taking a lawn
21 tractor and wanting to mow that backyard?
22        MR. GRIMSLEY:  Objection to form.  He's
23   not here to give opinions.  If you want to ask
24   him some facts, factual questions, he's here to
25   answer those.  He's not here to answer --



Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 11 of 18 PageID# 2962

TIMOTHY SEYMOUR  30(b)(6)  
BILENKY vs. RYOBI

August 22, 2014  
41–44

Page 41

1      MR. SHAPIRO: That's a factual question.
2      MR. GRIMSLEY: No, it's not. It calls for
3   an opinion.
4      MR. SHAPIRO: I asked the witness --
5      MR. GRIMSLEY: He's not been designated as
6   an expert. He's been designated as a
7   representative of Home Depot. He's not here to
8   give opinion questions -- or opinion answers.
9      MR. SHAPIRO: Okay. Your objection is
10  noted.
11     Q.   (By Mr. Shapiro) Is there anything that
12  you see unusual in this picture of a back yard that
13  would make it a back yard that couldn't be mowed with
14  a lawn tractor?
15     MR. GRIMSLEY: Same objection. He's not
16  here to give opinion in this case.
17     Q.   (By Mr. Shapiro) You can answer.
18     A.   Okay. It's a -- it's a back yard that is
19  flattish with some trees and obstacles to contend
20  with. It doesn't look unusual to me as a consumer.
21     (Plaintiff's Exhibit-7 was marked for
22  identification.)
23     Q.   (By Mr. Shapiro) Okay. Number 7 is a
24  picture. And I was just -- do you have any reason to
25  ever have known Frank Wright, who I'll represent is

Page 42

1   the person depicted in this picture?
2      A.   I have not.
3      Q.   Okay.
4      A.   I do not know him.
5      MR. GRIMSLEY: Thank you, sir.
6      Q.   (By Mr. Shapiro) Okay. I want to ask you
7   questions about this lawn tractor that was sold to
8   Mr. Wright. We talked about the sales receipt
9   earlier.
10     Do you know if HD did any inspections of
11  this model Ryobi lawn tractor before sales began in
12  Home Depot stores?
13     A.   So I wasn't here in 2005 or in that time
14  frame, so I can't speak to that particular lawn
15  tractor. I could speak generally to the process.
16     Q.   So the process that at least you engage in
17  now if you're taking on a new product category, do
18  you or one of your representatives with HD inspect a
19  model before? You know, once you're getting ready to
20  accept it for sales in your stores --
21     A.   When you say inspect, what do you mean by
22  that?
23     Q.   Is there any type of analysis of the
24  product that you or your -- I didn't ask you how many
25  people work for you, but I take it you have some

Page 43

1   people that work under you also?
2      A.   I actually don't.
3      Q.   Oh, okay. So do you yourself engage in
4   some sort of an inspection of -- I mean how -- how do
5   you --
6      MR. GRIMSLEY: Object to form.
7      Q.   (By Mr. Shapiro) -- analyze a new product?
8      MR. GRIMSLEY: Objection to form.
9      THE WITNESS: So, you know, we meet with
10  the manufacturers to understand their proposals
11  around a product. Much of our diligence is
12  centered around the manufacturer and their track
13  record in the industry, their evidence of
14  capabilities, their track record with the Home
15  Depot, and we expect them to kind of bring
16  quality products to the table.
17     Q.   (By Mr. Shapiro) So you're relying on the
18  manufacturer to have a safe product pretty much,
19  right?
20     MR. GRIMSLEY: Objection to form.
21     THE WITNESS: Yes.
22     Q.   (By Mr. Shapiro) So like is there a -- so
23  if Ryobi or a different company that's in your stores
24  now comes to you with a new product that's it's a new
25  model you're going to stick in the stores because you

Page 44

1   like it, do you have at Home Depot a group or
2   inspectors that get a model of the product before it
3   goes into your stores to check it carefully?
4      A.   I can't speak throughout the Home Depot.
5      Q.   Right.
6      A.   In my product category, we rely on the
7   manufacturers for inspection/testing of product.
8      Q.   So I'm going to say no because you rely on
9   the manufacturer.
10     MR. GRIMSLEY: I'm going to object that he
11  says -- you've put up the Ryobi lawn tractor
12  HDK. He said he does not know what occurred
13  with that lawn tractor -- with that model lawn
14  tractor. So I think this is -- all of these
15  checks or whatever you're going to put up there
16  are objectionable.
17     MR. SHAPIRO: Okay. Thank you for the
18  speaking objection.
19     Q.   (By Mr. Shapiro) So as far as you know,
20  in 2005 or 2006, your predecessor was who in that
21  role?
22     A.   I believe at that time it was Glenn
23  Ubertino.
24     Q.   Glenn Ubertino. Is he now no longer with
25  Home Depot or did he switch roles?



Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 12 of 18 PageID# 2963

TIMOTHY SEYMOUR  30(b)(6)                                    August 22, 2014
BILENKY vs. RYOBI                                                      45–48

Page 45

1  A.  He is no longer with the Home Depot.
2  Q.  I mean, you took over from him and --
3  A.  I'm three people after him.
4  Q.  Okay. But I mean, you know your process
5  you engage in now and that's what you're basing your
6  answer on here, right?
7  A.  Yes.
8  Q.  Okay. So we understand that, for the
9  record. Okay?
10      MR. GRIMSLEY: Objection still stands.
11  Q.  (By Mr. Shapiro) You weren't there in
12  2006, right?
13  A.  I was not, not in the capacity I am today.
14  Q.  Okay. Now, but you're speaking as a
15  company representative, and so I'm asking you about
16  safety tests before the sales began of the Ryobi lawn
17  tractor.
18      Based on the inquiry you made, do you know
19  if there were any safety tests done by Home Depot as
20  opposed to the manufacturer itself?
21      MR. GRIMSLEY: For what?
22  Q.  (By Mr. Shapiro) Before the tractor was
23  sold in Home Depot stores?
24      MR. GRIMSLEY: Are you talking about the
25      Ryobi tractor?

Page 46

1       MR. SHAPIRO: Yes. These are all about
2       the Ryobi tractor.
3       THE WITNESS: I do not know if there were
4       safety tests performed on the Ryobi tractor.
5       Given our current process, I would expect that
6       the manufacturer would have been responsible for
7       the safety tests.
8  Q.  (By Mr. Shapiro) Okay. And under your
9  current structure, Home Depot doesn't do its own
10 independent safety test; it relies on what the
11 manufacturer has done; is that fair?
12  A.  Yes. That's correct.
13  Q.  Okay. And so I'm saying no here. I
14 understand you said you weren't there. But based on
15 your process now, you don't have any reason to think
16 it was different then, do you?
17  A.  I don't have any reason to believe it was
18 different then.
19      MR. GRIMSLEY: Same objection.
20  Q.  (By Mr. Shapiro) Now what about design
21 review before sales, is -- I don't have a blank over
22 there.
23      But is there an internal HD design review
24 of the design of the lawn tractor besides --
25  A.  When you say design of lawn tractor, can

Page 47

1  you describe what you mean by that?
2  Q.  Like the mechanics or the way it works.
3  A.  No.
4  Q.  Okay.
5  A.  Home Depot doesn't get involved with that.
6  Q.  You would expect Ryobi or the
7  manufacturer, or whoever we're talking about, to do
8  that, right?
9  A.  We would expect the manufacturer to do
10 that, yes.
11  Q.  Now product revenue from sales, once the
12 product starts selling -- this seems pretty basic,
13 but Home Depot collects the money. And how do you
14 pay manufacturers? They place their product in your
15 store. Is it a 30-day? 90-day? How do you pay the
16 manufacturers once you sell products?
17      MR. GRIMSLEY: Objection to form,
18      relevance.
19      THE WITNESS: We -- we receive an invoice
20      from the manufacturer when we submit notice to
21      them that we have key rec'd the product, we have
22      basically received the product into our store --
23  Q.  (By Mr. Shapiro) Yes, sir.
24  A.  -- and then there are -- they submit an
25 invoice and we pay against that invoice over some

Page 48

1  period of time as -- varies by manufacturer.
2  Q.  I know some of this is proprietary. I
3  don't want exactitude here.
4      But for every lawn tractor Home Depot
5  sells, you're looking to have a certain markup or
6  percentage and then you're paying the
7  manufacturer/distributor a part of that sales
8  revenue?
9  A.  We pay them for receipt of the product,
10 and then we sell the product, yes.
11  Q.  Okay. So, in essence, are you paying them
12 before you sell?
13  A.  In some cases that's possible, yes.
14  Q.  Okay.
15  A.  We pay upon receipt.
16  Q.  Okay. Okay. I want to show you a
17 document which is a Consumer Product Safety
18 Commission document.
19      (Plaintiff's Exhibit-8 was marked for
20      identification.)
21  Q.  (By Mr. Shapiro) And I've put in front of
22 you what we've marked as No. 8. And I wanted to ask
23 you --
24      MR. GRIMSLEY: Before you ask your
25      question, I'm going to note an objection to this



Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 13 of 18 PageID# 2964

TIMOTHY SEYMOUR  30(b)(6)  
BILENKY vs. RYOBI

August 22, 2014  
49–52

Page 49

1  document and its relevance. It's an ongoing
2  objection.
3      MR. SHAPIRO: Okay.
4      MR. GRIMSLEY: Thank you.
5      MR. SHAPIRO: Understood. I'll give you
6   an ongoing objection to the CPSC documents.
7   Q. (By Mr. Seymour) Mr. Seymour, I'm showing
8  you a document, which in the -- near the top left, it
9  says November 16, 2001. And it's a Consumer Product
10 Safety Commission letterhead notice. And it
11 announces a recall, it says, of 35,000 lawn tractors;
12 and it mentions brands here: Poulan Pro, Weed Eater,
13 Husqvarna, and I guess it's -- I don't know if it's
14 Jonsered or Jones.
15  A. Jonsered.
16  Q. Jonsered. It shows some pictures.
17     Were you familiar with this 2001 recall
18 for any reason?
19  A. No.
20  Q. So do you see that it includes a Husqvarna
21 manufacturer ID number on here?
22  A. Yes.
23  Q. And do you see it mentions fuel tanks on
24 these lawn tractors had cracking?
25  A. Yes.

Page 50

1   Q. And it says, a little higher up, The tank
2  in the lawn tractor can crack and leak fuel, posing a
3  fire hazard. Do you see that?
4   A. I do.
5   Q. And it involved 35,000 lawn tractors.
6  Now, do you know whether any of these lawn tractors
7  under this 2001 recall were sold in Home Depot
8  stores?
9   A. I do not.
10  Q. Okay. I'm done with that exhibit.
11     Here's an exhibit I'm going to mark as
12 No. 9. And I have a question. Let me get the copy
13 for you.
14     (Plaintiff's Exhibits-9 and 10 were marked
15     for identification.)
16     MR. GRIMSLEY: Thank you. Do you have
17     another copy?
18     MR. SHAPIRO: Somewhere. I don't know
19     where it's gone.
20     MR. GRIMSLEY: Here.
21     MR. SHAPIRO: Did I give you two? Maybe I
22     gave him two. Yeah, there it is.
23  Q. (By Mr. Shapiro) On this document we
24 marked as 9, it has a Consumer Product Safety
25 Commission heading, and it says December 6, 2004, on

Page 51

1  the top left. Do you see that?
2   A. Yes.
3   Q. And it mentions Husqvarna lawn tractors,
4  5,280 units, and it mentions a hazard of the lawn
5  tractors can develop abrasions on the fuel tank
6  because of the fuel line clamp's location. This can
7  result in a fuel tank leak, which could pose a fire
8  hazard to consumers. It shows a picture of a type of
9  tractor.
10     Did you make inquiry whether Home Depo had
11 any familiarity with this recall from 2004?
12  A. I do not know if Home Depot had
13 information on this recall.
14  Q. In order to look into that, Mr. Seymour,
15 what did you do to inquire? Because, you know, we
16 listed recalls -- information about recalls in our
17 deposition notice.
18     MR. GRIMSLEY: And I am going to state for
19     the record that we have responded to the notice
20     and incorporate that response.
21     MR. SHAPIRO: Okay.
22  Q. (By Mr. Shapiro) So just generally, was
23 Home Depot aware of this recall involving Husqvarna
24 lawn tractors at any time after 2004?
25  A. I'm not sure if Home Depot is aware. I am

Page 52

1  not aware.
2   Q. Okay. Well, I understand you weren't in
3  your category back then in '04. But how would you
4  make inquiry to determine if your predecessor or
5  persons or agents had notice of this recall?
6   A. So I -- the recall process is one, as a
7  merchant, not my area of expertise. So I would defer
8  that to other parts of the organization that are
9  better versed in recalls and Consumer Product Safety
10 Commission issues.
11  Q. So like -- but to get ready for today, did
12 you make inquiry or did you find if anyone was
13 familiar with this?
14  A. No.
15  Q. Okay. I will mark that as No. 9.
16     I think I asked you this, but let me just
17 go ahead and mark this.
18     (Plaintiff's Exhibit-10 was marked for
19     identification.)
20  Q. (By Mr. Shapiro) This is just
21 highlighting the same recall. Is it true that
22 this -- the hazards -- one of the hazards noted --
23 outlined in the recall was that there could be a fuel
24 tank leak which could pose a fire hazard to
25 consumers?



Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 14 of 18 PageID# 2965

TIMOTHY SEYMOUR  30(b)(6)                                       August 22, 2014
BILENKY vs. RYOBI                                                        53–56

Page 53

1     MR. GRIMSLEY: Objection to form.
2     THE WITNESS: Yes.
3  Q.  (By Mr. Shapiro) This particular recall
4  covered a 42-inch cutting deck; is that correct?
5  A.  Yes, that's what it says here.
6  Q.  And it was a Husqvarna. Husqvarna was the
7  only manufacturer involved in this recall, correct?
8     MR. GRIMSLEY: Objection, form.
9     THE WITNESS: That's what the highlight
10    says.
11 Q.  (By Mr. Shapiro) Okay. And it lists two
12 model numbers, which I'm not going to recite but
13 they're listed there, right?
14 A.  Yes.
15 Q.  And so they were 42-inch cutting deck,
16 gas-powered mowers made by Husqvarna, right?
17 A.  Yes.
18 Q.  And the subject mower which was involved
19 in this case, do you know the generalities of whether
20 it was 42-inch or not?
21    MR. GRIMSLEY: Objection to form;
22    objection, relevance.
23    THE WITNESS: From the SKU description we
24    have, I don't know.
25 Q.  (By Mr. Shapiro) Okay. Do you know what

Page 54

1  this means in the model?
2  A.  I would -- I would imagine that means it's
3  a 42-inch cutting diameter.
4  Q.  And from your research you did -- I don't
5  know if we talked about this earlier -- did you
6  determine whether Husqvarna contract-manufactured the
7  lawn tractor that Ryobi sold to Mr. Wright in this
8  case?
9     MR. GRIMSLEY: Objection to form.
10    THE WITNESS: I believe that Husqvarna
11    manufactured the Ryobi lawn tractors, yes.
12    MR. SHAPIRO: Okay.
13    (Plaintiff's Exhibit-11 was marked for
14    identification.)
15 Q.  (By Mr. Shapiro) Let me show you what
16 I've marked as No. 11, which at the top has a
17 Consumer Product Safety Commission title. On the
18 left, it says, July 11, 2006. And ask you if you
19 made inquiry as to whether Home Depot was familiar
20 with this Consumer Product Safety Commission recall
21 notice of July 2006?
22 A.  No.
23 Q.  You didn't make inquiry as to whether Home
24 Depot was aware or --
25 A.  I -- I'm not -- I'm not aware. I don't

Page 55

1  know whether Home Depot would have been aware. As I
2  mentioned, the recall process is outside of my
3  expertise.
4  Q.  Okay. But as a company representative,
5  did you make inquiry of other people with the company
6  to answer the question as to whether Home Depot or
7  its agents got notified about this recall notice,
8  which I was going to ask about some particulars, but
9  it involved Husqvarna products, right?
10 A.  It appears to involve Husqvarna products.
11 I'm not -- I'm not aware of whether Home Depot had
12 notice of this or not.
13 Q.  Okay. On this particular recall which
14 I've handed you, this is a pretty big recall, isn't
15 it, because it affected 174,000 lawn tractors?
16 A.  It affects 174,000 lawn tractors.
17 Q.  And the brands that are covered here down
18 the left column are Craftsman -- you said Home Depot
19 has carried Craftsman products before, correct?
20 A.  No, sir.
21 Q.  Oh, I'm sorry. Oh, that's right. You
22 were answering a question about --
23 A.  I'd like to get you another pointer, too.
24 Okay?
25 Q.  Thank you for correcting me.

Page 56

1     That's a Sears product usually, right?
2  A.  Yes, sir.
3  Q.  Okay. Husqvarna-branded products, you
4  said you weren't sure if --
5  A.  I'm not sure whether Home Depot has sold
6  Husqvarna.
7  Q.  Murray products have been sold in Home
8  Depot before, haven't they?
9  A.  I believe Murray products have been sold
10 in Home Depot before.
11 Q.  And on the next page, Poulan and Poulan
12 Pro, have those been sold in Home Depot?
13 A.  Products of that brand have been sold in
14 Home Depot.
15 Q.  And what about Southern States or Weed
16 Eater?
17 A.  Southern States, I'm not sure but would
18 believe not. Weed Eater, yes.
19 Q.  Okay. So --
20 A.  Those may not be lawn tractors, for what
21 it's worth.
22 Q.  Okay. So -- but you were pointing out you
23 might sell other products by that --
24 A.  Correct, other -- other product
25 categories, yes.



Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 15 of 18 PageID# 2966

TIMOTHY SEYMOUR  30(b)(6)                                  August 22, 2014
BILENKY vs. RYOBI                                                    57–60

Page 57

1  Q.  So this particular recall, which -- let me
2  hand you what's being marked right now as No. 12,
3  which is just a highlight of some of the language on
4  that recall.
5      (Plaintiff's Exhibit-12 was marked for
6   identification.)
7  Q.  (By Mr. Shapiro)  In this July 2006
8  recall, the hazard identified was:  The fuel line on
9  these lawn tractors can separate from the fuel tank
10 outlet.  If this occurs, fuel will spill out, posing
11 a fire hazard, correct?
12 A.  Yes.
13 Q.  And the recall mentions 886 reports of
14 fuel lines have separated, didn't it?
15 A.  It does, yes.
16 Q.  And reports of fires related to the issue?
17     MR. GRIMSLEY:  Are you asking if that's
18  what it says?
19     MR. SHAPIRO:  Yes, sir.
20     THE WITNESS:  Yes, that's what it says.
21     MR. SHAPIRO:  Okay.  11 and 12.
22     THE WITNESS:  Do I need to give these
23  back?
24     (Plaintiff's Exhibit-13 was marked for
25   identification.)

Page 58

1  Q.  (By Mr. Shapiro)  Let me show you what I'm
2  marking as No. 13.  Okay?  There's pictures here
3  showing a side-by-side view of what appear to be a
4  couple of fuel tanks.
5      Do you see that?
6  A.  Yes.
7  Q.  Well, first of all, on the lawn tractors
8  that Home Depot sells, does Home Depot -- if the
9  consumer/customer wants a replacement fuel tank, does
10 Home Depot sell any replacement parts like that?
11 A.  No.
12 Q.  Is that something the consumer has to go
13 to the manufacturer to get?
14 A.  The manufacturer or a dealer, yes.
15 Q.  Okay.  Do you have any awareness from your
16 inquiry and appearing as a company representative
17 today as to whether what's shown here on the left
18 side, this tank 185534, was the original tank in the
19 Ryobi tractor that we were talking about as the
20 subject tractor in this case?
21 A.  I do not know.
22 Q.  Okay.  Do you know anything about the
23 updated tank that we show here on the right side of
24 this page?
25     MR. GRIMSLEY:  Objection to form, and

Page 59

1  object to the relevance --
2      THE WITNESS:  I do not know.
3      MR. GRIMSLEY:  -- and the admissibility of
4   this document.
5      MR. SHAPIRO:  Okay.
6      (Plaintiff's Exhibit-14 was marked for
7   identification.)
8  Q.  (By Mr. Shapiro)  I'm marking No. 14 here,
9  which shows an underside of a fuel tank.  And it
10 shows what we've been calling in other depositions, I
11 guess, a nipple or a barb or a fuel tank outlet.
12     In being the category manager in this
13 field, do you ever look at the fuel line connection
14 to the fuel tanks on these lawn tractors?
15 A.  No, I do not.
16 Q.  Do you know what clamping methods the
17 manufacturers use to hook fuel lines to fuel tanks on
18 lawn tractors?
19 A.  No, I do not.
20 Q.  Okay.  So the selection of the type of
21 clamp, for example, that would hold a fuel line onto
22 a fuel tank, would that be something that Home Depot
23 would ever specify to a lawn tractor manufacturer?
24 A.  No.
25 Q.  Would you expect the lawn tractor

Page 60

1  manufacturer to select the clamping method for a fuel
2  line?
3  A.  Yes.
4      (Plaintiff's Exhibit-15 was marked for
5   identification.)
6  Q.  (By Mr. Shapiro)  I'm showing you what
7  we're going to mark as No. 15.  And there's a graphic
8  here and the same -- an image of a fuel tank outlet.
9      These round protrusions that are being
10 pointed to here, what do you call those?
11 A.  I wouldn't have any language for them.  I
12 see where it says call them barbs.  I would have
13 called them -- I'm not sure.
14 Q.  Okay.  So you don't have a title for that.
15 Okay.
16 A.  I don't.
17 Q.  Okay.  Let me mark and show you what we're
18 going to identify as No. 16.
19     (Plaintiff's Exhibit-16 was marked for
20  identification.)
21 Q.  (By Mr. Shapiro)  This is another image
22 from the underside of a fuel tank, and in this one,
23 there's a separate black-color piece here.
24     And do you have any awareness of whether
25 manufacturers put this type of fuel tank outlet on

Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 16 of 18 PageID# 2967

TIMOTHY SEYMOUR  30(b)(6)
BILENKY vs. RYOBI

August 22, 2014

61–64

Page 61

1 tractors that you have been familiar with as a
2 product category manager?
3         MR. GRIMSLEY:  Objection to form.
4         THE WITNESS:  I'm not aware of whether
5    that exists on lawn tractors at this time.
6     Q.   (By Mr. Shapiro)  So whether it was Ryobi
7 or whether it was a different brand, you're just not
8 familiar with this type of data or information?
9     A.   This is a --
10        MR. GRIMSLEY:  Objection.
11        THE WITNESS:  -- mechanical detail of a
12   lawn tractor that I wouldn't have an opinion on
13   as a category manager.
14        (Plaintiff's Exhibit-17 was marked for
15   identification.)
16    Q.   (By Mr. Shapiro)  I'm marking as No. 17
17 another picture, and we have a title on it, Tank barb
18 comparison.  And there's an inset here showing just
19 the outlet from one tank, and then you can see
20 there's a black, below it, other fuel tank outlet.
21        Do you have any opinion as to which type
22 of outlet is better on a lawn tractor between the two
23 that are being shown?
24        MR. GRIMSLEY:  Objection.  He's not here
25    to give opinions.

Page 62

1         MR. SHAPIRO:  Well, he's a product
2    category manager.
3         MR. GRIMSLEY:  I don't care what he is.
4    He's not here to give opinions in this case.
5    He's not designated as an expert.
6     Q.   (By Mr. Shapiro)  Do you have any
7 experience, as a product category manager, as to the
8 methods of fuel tank outlets on tanks that are used
9 by manufacturers?
10    A.   I do not.
11    Q.   Okay.  So we covered the top part here of
12 this chart, and then I just covered with you recall
13 information in 2001, 2004, and 2006.
14        And each of those recalls that I covered
15 with you, can we agree that they all covered fuel
16 tank issues or fuel line connections to fuel tanks?
17        MR. GRIMSLEY:  Objection to form.
18        THE WITNESS:  Yes.
19        MR. GRIMSLEY:  Continuing objection on
20    relevance.
21        MR. SHAPIRO:  Let's take a quick break.
22    I'm almost done.
23        THE VIDEOGRAPHER:  Off the record at 9:10
24    a.m.
25        (Recess from 9:10 a.m. to 9:19 a.m.)

Page 63

1         THE VIDEOGRAPHER:  Back on the record at
2    9:19 a.m.
3     Q.   (By Mr. Shapiro)  So, Mr. Seymour, we were
4 just covering -- let's finish covering these recalls.
5         And you mentioned to me that in 2006 when
6 this last recall was issued you had not yet taken
7 over as product category manager in the lawn tractor
8 area, right?
9     A.   Correct.
10    Q.   But you made inquiry and you're telling us
11 you're not sure whether the person in your role or
12 any other agents of Home Depot found out about the
13 recalls that affected the 174,000 mowers in 2006?
14    A.   Correct.  I'm not aware.
15    Q.   And the answer is the same with regard to
16 the 2004 recall that involved, I think, a far less
17 number of mowers?
18    A.   Correct.
19    Q.   Are there circumstances where recalls
20 occur in your category that Home Depot does take
21 action to notify customers?
22    A.   I'm in -- I can speak from my experience
23 on a recall.  We're notified by the manufacturer of
24 the recall and then work with the manufacturer on the
25 appropriate actions coming out of the recall.

Page 64

1     Q.   Because some recalls involve the customers
2 returning products, right, or getting a new part?
3         MR. GRIMSLEY:  Objection to form.
4         THE WITNESS:  I'm not sure about that,
5    actually.  Yes, I mean, I think typically
6    there's an option for the customer to have
7    remediation done to the product.
8     Q.   (By Mr. Shapiro)  And what would
9 remediation mean?
10    A.   Something fixed on the product.
11    Q.   Okay.  And usually who would pay the cost
12 of a recall, if there's a cost and a new part or
13 something repaired?
14    A.   The manufacturer would pay.
15    Q.   Would Home Depot ever take on that cost?
16    A.   I'm not aware of a circumstance where
17 that's true.
18    Q.   Okay.  I just want to ask questions about
19 what, if any, necessary steps were taken after these
20 industry recalls.  I talked about '01, '04, and '06.
21 Now --
22        MR. GRIMSLEY:  Before we get started, I
23    want my objection noted as to relevance of any
24    of these recalls.
25        MR. SHAPIRO:  I understand.



Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 17 of 18 PageID# 2968

TIMOTHY SEYMOUR  30(b)(6)
BILENKY vs. RYOBI

August 22, 2014

65–68

Page 65

1   Q.   (By Mr. Shapiro)  Did Home Depot request
2  that Ryobi warn consumers after -- let me just talk
3  about the 2004 or 2006 recalls.
4        Did Home Depot, based on your inquiry, ask
5  Ryobi to warn consumers about the fuel leaks on any
6  products that might affect Ryobi's sales?
7   A.   I don't know.
8   Q.   Okay.  So I'm just going to say we don't
9  know here on the yes or no.
10       Did Home Depot request that Husqvarna warn
11 consumers -- we established earlier Husqvarna was the
12 contract manufacturer of the mower for Ryobi, right?
13  A.   Yes.
14  Q.   Did Home Depot request that Husqvarna warn
15 any consumers that were purchasers of Ryobi mowers
16 that might have been affected by the recalls?
17       MR. GRIMSLEY:  Objection to form.
18 There's --
19       THE WITNESS:  I don't --
20       MR. GRIMSLEY:  Let me finish my objection.
21  There's no indication in this case at all that a
22  Ryobi lawn tractor was involved in the recall.
23  So all of these questions are not only
24  objectionable with regard to the recalls
25  themselves being relevant, but you've indicated,

Page 66

1  which is --
2       MR. SHAPIRO:  Okay.
3       MR. GRIMSLEY:  -- completely not true,
4  that a Ryobi tractor was involved in the recall.
5  I think that's just completely unfair to this
6  witness.
7       MR. SHAPIRO:  Okay.  Thank you.  That's
8  not an objection that ought to be made to that
9  question.
10  Q.   (By Mr. Shapiro)  So you don't know the
11 answer to this one, either?
12  A.   Correct.  I do not know.
13  Q.   Okay.  Did Home Depot warn any customers
14 itself, by examining any sales records, as to whether
15 Ryobi products could have been affected by either the
16 '04 or the '06 recall?
17       MR. GRIMSLEY:  Objection to form.
18       THE WITNESS:  I don't know.
19  Q.   (By Mr. Shapiro)  And did Home Depot issue
20 any notices to any stores or on the web to any of its
21 customer that bought Ryobi mowers?
22  A.   I don't know.
23  Q.   Okay.  Do you know whether the -- in 2004,
24 the recall that we talked about earlier that involved
25 fuel tanks or leaks, do you know whether the part on

Page 67

1  the recall in 2004, the fuel tank part, was the same
2  part that was included on any Ryobi mowers that were
3  sold in Home Depot?
4   A.   I don't know.
5        MR. SHAPIRO:  Okay.  Those are all my
6  questions.
7        MR. GRIMSLEY:  Thank you.  I don't have
8  any questions.
9        THE VIDEOGRAPHER:  This concludes the
10 deposition at 9:24 a.m.
11       (Deposition concluded at 9:24 a.m.)
12       [Orders given to reporter as stated:  For
13 Mr. Shapiro, original, electronic PDF and PTX;
14 return original exhibits with transcript copy.
15 For Mr. Grimsley, electronic, black-and-white
16 pictures.  Orders expedited by e-mail.]
17       (Pursuant to Rule 30(e) of the Federal
18 Rules of Civil Procedure and/or O.C.G.A.
19 9-11-30(e), signature of the witness has been
20 waived.)

Page 68

1           C E R T I F I C A T E
2
3  STATE OF GEORGIA:
4  COUNTY OF FULTON:
5        I hereby certify that the foregoing
6   transcript was taken down, as stated in
7   the caption, and the questions and answers
8   thereto were reduced to typewriting under
9   my direction; that the foregoing pages 1
10  through 67 represent a true, complete, and
11  correct transcript of the evidence given
12  upon said hearing, and I further certify
13  that I am not of kin or counsel to the
14  parties in the case; am not in the regular
15  employ of counsel for any of said parties;
16  nor am I in anywise interested in the result
17  of said case.
18       This, the 27th day of August, 2014.
19
20  
21
       DEBORAH P. LONGORIA, CCR B-1557, RPR

Case 2:13-cv-00345-RAJ-DEM   Document 133-4   Filed 01/09/15   Page 18 of 18 PageID# 2969

TIMOTHY SEYMOUR  30(b)(6)  
BILENKY vs. RYOBI

August 22, 2014

69

Page 69

```
 1              COURT REPORTER DISCLOSURE
 2
         Pursuant to Article 8.b. of the Rules and
 3  Regulations of the Board of Court Reporting of the
    Judicial Council of Georgia which states: "Each court
 4  reporter shall tender a disclosure form at the time
    of the taking of the deposition stating the
 5  arrangements made for the reporting services of the
    certified court reporter, by the certified court
 6  reporter, the court reporter's employer, or the
    referral source for the deposition, with any party to
 7  the litigation, counsel to the parties or other
    entity.  Such form shall be attached to the
 8  deposition transcript," I make the following
    disclosure:
 9
         I am a Georgia Certified Court Reporter.  I am
10  here as a representative of Esquire Solutions.
    Esquire Solutions was contacted to provide court
11  reporting services for the deposition.  Esquire
    Solutions will not be taking this deposition under
12  any contract that is prohibited by O.C.G.A.
    9-11-28(c).
13
         Esquire Solutions has no contract/agreement to
14  provide reporting services with any party to the
    case, any counsel in the case, or any reporter or
15  reporting agency from whom a referral might have been
    made to cover this deposition.  Esquire Solutions
16  will charge its usual and customary rates to all
    parties in the case, and a financial discount will
17  not be given to any party to this litigation.
18           Deborah P. Longoria
19
20           DEBORAH P. LONGORIA, CCR B-1557, RPR
21
22
23
24
25
```

